Reversed and Rendered and Memorandum Opinion filed June 24,
2010.



 



 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00062-CV



 

Bryan Independent School
District and Brazos County,
Appellants

V.

Brad Cune, Appellee

 



On Appeal from the 272nd
District Court

Brazos County, Texas

Trial Court Cause No. 48867-CV



 

MEMORANDUM OPINION

 

       Appellants, Bryan Independent
School District and Brazos County, appeal an order awarding excess proceeds
from a property-tax foreclosure sale to appellee, Brad Cune, as assignee of the
purported former property owner, George Earl Jenkins.  In three issues,
appellants contend Cune did not prove the assignor was entitled to the excess
proceeds and Cune failed to claim the proceeds within the time period
prescribed by statute.  We reverse and render.

            

I.         Background

In 1999, appellants sued George Earl
Jenkins, Delores Jenkins, and Vernell King, alleging they owned or had an
interest in certain real property on which taxes were delinquent and seeking foreclosure
of appellants’ tax lien.[1]
 On November 30, 2000, the trial court signed a judgment ordering foreclosure and
sale of the property.  The sale was conducted on May 6, 2003.  After
disbursement of proceeds for payment of past due taxes and various fees
associated with the sale, there remained excess proceeds of $14,781.86, which
the sheriff paid to the district clerk.  Within thirty days after receipt of
the excess proceeds, the district clerk sent documents entitled “Notice of
Excess Funds,” via certified mail, return receipt requested, to the defendants
at the addresses set forth in the petition and to all parties’ attorneys.

On March 26, 2008, Cune filed a
“Motion To Release Excess Proceeds Subject To Tax Code §34.04 Via Assignment,”
alleging that “George Earl Jenkins” assigned the right to excess proceeds to
Cune and attaching an affidavit of assignment.  Each appellant filed pleadings,
asserting Cune’s claim was barred by the statute of limitations and requesting
that it be paid the excess proceeds.

On September 11, 2008, the trial
court held a hearing on Cune’s motion and, at the conclusion, announced that it
granted the motion.  On the same day, the trial court signed an order awarding
the excess proceeds to Cune.  Appellants filed a motion for new trial.  At a
hearing, the trial court orally denied the motion but did not sign a written
order.

II.        Analysis

A.        Applicable Law

     Chapter 34 of the Texas Tax Code
prescribes the procedures for tax sales and redemption.  See Tex. Tax
Code Ann. §§ 34.01–34.23 (Vernon 2008 & Supp. 2009).  Proceeds of a tax
sale are applied first to various expenses associated with the tax suit and
sale, then to the taxing unit for certain expenses, and then to taxes,
penalties, interest, attorney’s fees, and other amounts awarded under the
judgment.  Id. § 34.02(a).  Excess proceeds are paid to the clerk of the
court issuing the warrant or order of sale.  See id. § 34.02(d).

    Section 34.03 imposes certain
duties on the clerk of the court with respect to “Disposition of Excess
Proceeds.”  The clerk is required to perform the following actions upon receipt
of excess proceeds:

(1) if the amount of excess proceeds is more than $25,
before the 31st day after the date the excess proceeds are received by the
clerk, send by certified mail, return receipt requested, a written notice to
the former owner of the property, at the former owner’s last known address
according to the records of the court or any other source reasonably available
to the court, that:

            (A) states the amount of the excess
proceeds;

 

            (B) informs the former owner of that owner’s
rights to claim the excess proceeds under Section 34.04;  and

 

            (C) includes a copy or the complete text
of this section and  Section 34.04;  and

 

(2) regardless of the amount, keep the excess proceeds
. . . for a period of two years after the date of the sale unless otherwise
ordered by the court.

 

Id. § 34.03(a).

Section 34.04 governs “Claims for
Excess Proceeds.”  A person, including a taxing unit, may file a petition in
the court that ordered the seizure or sale setting forth a claim to the excess
proceeds.  Id. § 34.04(a).  The petition must be filed before the second
anniversary of the date of the sale of the property.  Id.  At the
hearing, the trial court must order that the excess proceeds be paid according
to certain priorities to each party “that establishes its claim to the
proceeds.”  Id. § 34.04(c).  The last payee outlined in the list of
priorities is “each former owner of the property, as the interest of each may
appear . . . .”  Id.
§ 34.04(c)(5).[2] 
Further, a former owner may assign his interest in excess proceeds to another
person if certain requisites are satisfied.  See id. § 34.04(f)–(h).  An
order under this section directing that all or part of the excess proceeds be
paid to a party is appealable.  Id. § 34.04(e).

Finally, under section 34.03(b), if
no claimant establishes entitlement to the proceeds within two years from the
date of sale, “the clerk shall distribute the excess proceeds to each taxing
unit participating in the sale in an amount equal to the proportion its taxes,
penalties, and interests bear to the total amount of taxes, penalties, and
interest due all participants in the sale.”  Id. § 34.03(b).   

B.        Issues

In their first issue, appellants
contend Cune failed to establish his claim to the proceeds, as assignee of
Jenkins, because he failed to prove Jenkins was a former owner of the property or
the amount of his ownership interest, considering there were several defendants
to the delinquent-tax suit.  See id. § 34.04(c).  Appellants’ second and
third issues are interrelated and concern their contention that Cune was not
entitled to the proceeds because he failed to file his motion within two years
after sale of the property.  See id. § 34.04(a).  Appellants
raised this issue at the hearing on Cune’s motion.[3]

At the hearing, Cune did not dispute
that neither he nor Jenkins filed a request for the excess proceeds within the
prescribed two-year period.  Indeed, in his motion, Cune acknowledged the sale
occurred approximately five years before filing of the motion.  Instead, Cune advanced
two reasons he was nonetheless entitled to the proceeds, as assignee of
Jenkins: (1) Jenkins did not receive notice of his right to claim the proceeds
until more than two years after the sale; and (2) equity demanded award of the
proceeds to Jenkins because the taxing units were paid in full.  Cune advances
an additional equitable argument on appeal, contending he is entitled to the
funds because appellants did not timely request them.

We need not decide whether Cune
proved Jenkins was a former owner of the property or the amount of his interest
because we conclude the claim was barred by the two-year requirement.[4]

C.        The Two-Year Requirement

            Preliminarily, we note
that Cune correctly asserts appellants did not timely request findings of fact
and conclusions of law.  Thus, Cune suggests we may uphold the trial court’s
order because it made all implied findings necessary to support a conclusion he
was entitled to the proceeds, including a finding that Jenkins did not receive the
clerk’s notice of his right to claim the proceeds.

In the absence of findings
of fact and conclusions of law, we indeed
imply the trial court found all facts necessary to support its judgment that are supported by the evidence.  See BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789, 795 (Tex. 2002); Vickery v. Comm’n for Lawyer Discipline,
5 S.W.3d 241, 251–52
(Tex. App.—Houston [14th Dist.] 1999, pet. denied).  The implied findings may
be challenged on appeal for legal and factual sufficiency when, as in this
case, the appellate record includes the reporter’s and clerk’s records.  BMC
Software Belg., N.V, 83 S.W.3d at 795; Vickery, 5 S.W.3d at 252.

 

However, in this case, the trial
court recited findings in its order as follows: “[Cune] has complied with all
statutory requirements to allow disbursement of the excess tax revenue that is
the subject of this suit.  Specifically the court finds that: - The tax burden
that is the subject of this suit has been satisfied; - [Cune] obtained a valid
assignment and is therefore entitled to the excess proceeds.”  

Findings of fact or conclusions of
law should not be recited in a judgment but should be filed as a separate
document; if findings are made in the judgment and conflict with findings
separately filed under Texas Rules of Civil Procedure 297 and 298, the latter
control for appellate purposes.  Tex. R. Civ. P. 299a; see also Tex. R.
Civ. P. 297, 298.  However, our court and the Waco Court of Appeals, from which
the present case was transferred, have recently stated that findings recited in
an order or judgment will be accorded probative value so long as they do not
conflict with findings recited in a separate document.  See In the
Interest of C.A.B., 289 S.W.3d 874, 880–81 (Tex. App.—Houston [14th Dist.]
2009, no pet.); In re Sigmar, 270 S.W.3d 289, 295 n.2 (Tex.
App.—Waco 2008, orig. proceeding [mand. denied]) (both citing In re U.P.,
105 S.W.3d 222, 229 n.3 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). 

Moreover, at both hearings, the trial
court explained the reason for its ruling.  At the original hearing, after the
parties made opening arguments but before presentation of any evidence, the
trial court announced it would rule in Cune’s favor and stated, “Equitably
speaking, the man’s property was sold” and “To me, in fairness, he gets the
money if you-all [appellants] have been paid.”  At the motion-for-new-trial hearing,
the court reiterated that Jenkins should receive the funds because he was a
“destitute,” older man and the tax liabilities had been satisfied.[5] 
The court acknowledged the two-year requirement and that its ruling was “on
shaky ground” for appellate purposes but opined equities sometimes “clash” with
“technicalities of the statute and the law.”

We recognize that comments made by
the trial court at the conclusion of a bench trial do not substitute for
findings of fact and conclusions of law.  See In re W.E.R., 669 S.W.2d 716, 716
(Tex. 1984).  However,
in this case, the findings in the trial court’s order effectively mirrored the
oral comments.  In particular, there was no dispute regarding validity of the
assignment to Cune.  Thus, the only other finding recited in the order—that the
tax burden had been satisfied—confirms the trial court concluded this fact alone
warranted award of the proceeds to Jenkins, and Cune as assignee, despite the
untimely request.  We will review this conclusion as a legal question because
satisfaction of the tax burden is not disputed.  See BMC Software Belg., N.V.,
83 S.W.3d at 794.

Although we understand the trial
court’s concerns, Cune cites, and we find, no provision in Chapter 34 allowing
a court to abrogate the statutory guidelines for distribution of excess
proceeds, including the two-year requirement for making a claim, based on
equitable considerations.  See Tex. Tax Code Ann. §§ 34.01–34.23. 
Clearly, the existence of excess proceeds available to the former owner,
as the last distributee in the order of priorities, entails the tax burden has
been satisfied.  See id. § 34.04(c)(5).  Yet the legislature chose to
impose a time limit for a party, even the former owner, to pursue a claim to
the proceeds.  See id. § 34.04(a).

Moreover, the trial court made no
express finding on Cune’s contention that his request was not time-barred
because Jenkins failed to receive the clerk’s notice of his right to claim the
proceeds.  Nonetheless, we will address this contention.  In his brief, Cune
asserts, “[w]hile Mr. Jenkins and Mr. Cune do not dispute the timeframe as to
the two year period in which to file this suit, in order for the statute to
run, proper notice must be given.”  However, Cune cites no authority to support
this proposition.  Chapter 34 contains no exception to the two-year requirement
if a claimant did not receive the clerk’s notice.  See Tex. Tax Code
Ann. §§ 34.01–34.23.  We decline to read an additional
provision into the statute that the legislature did not include.[6]

In fact, the two-year period is not triggered
by the date that the clerk sent the notice or the former owner received the
notice but by the date of the sale of the property.  See id. § 34.04(a). 
Further, the clerk is required only to send the notice to the “last known
address according to the records of the court or any other source
reasonably available to the court.”  See id. § 34.03(a) (emphasis
added).  The clerk is not required to verify that this “last known address” is
actually the correct address of the former owner at the time the clerk mails
the notice.  See id.  Additionally, the provision requiring the clerk to
distribute the proceeds to “each taxing unit participating in the sale . . .”
if no person files a petition claiming the proceeds within the two years does
not also mandate that the clerk first verify all former owners received
notice.  See id. § 34.03(b).  These provisions indicate the
legislature did not intend for application of the two-year deadline to depend
on whether, or when, the claimant received the clerk’s notice. 

To the extent Cune suggests that the general
discovery rule should apply, we reject this contention.  The discovery rule,
when applicable, defers accrual of a cause of action until the plaintiff knew
or, exercising reasonable diligence, should have known of the facts giving rise
to the cause of action.  HECI Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex. 1998).
 The discovery rule is “a very limited exception” to accrual when an
injury is both inherently undiscoverable and objectively verifiable.  Schneider Nat’l Carriers, Inc. v. Bates,
147 S.W.3d 264, 279 (Tex. 2004).

For the following reasons, we cannot
conclude Jenkins’s right, if any, to claim the excess proceeds was inherently
undiscoverable: the claim followed foreclosure and sale of Jenkins’s own
property, according to his allegation he was an owner; the delinquent-tax suit,
foreclosure, sale of the property, and existence of excess proceeds were
matters of public record; and the clerk also sent timely notice regarding the
excess proceeds to the attorney appointed to represent the defendants,
including Jenkins, in the tax suit—the same attorney who did file a petition
seeking the proceeds on behalf of “George Earl Jenkins Jr.” five years later—and
the record confirms the attorney received the notice.  

Cune suggests that Jenkins’s right to
due process under the United States Constitution would be violated if Jenkins’s
claim for the proceeds were time-barred because he will be deprived of his
property without proper notice.   However, this case is not a proceeding to set
aside the judgment ordering foreclosure and sale of the property due to lack of
notice.  Rather, because the foreclosure and sale were completed, Jenkins moved
into the position of a claimant seeking affirmative relief, i.e. recovery of
funds held by the clerk, under a statute requiring that he, like any other
claimant, satisfy certain prerequisites.  See Tex. Tax Code Ann. § 34.04.[7]

Finally, Cune advances another
argument for upholding the order on equitable grounds, although he did not present
this contention in the trial court; he asserts his request was “predicated by
the inaction of the taxing authorities” because they “had ample opportunity” to
file a motion requesting the proceeds, but did not do so until Cune filed his
motion.

Under section 34.04, a taxing unit is
included within the entities who may file a petition to claim the excess
proceeds.  Id. § 34.04(a).  In the list of
distributees entitled to the proceeds under section 34.04, a taxing unit has
precedence over a former owner if it asserts a claim for “any taxes, penalties,
or interest that have become due or delinquent on the subject property
subsequent to the date of the judgment or that were omitted from the judgment
by accident or mistake” or “any unpaid taxes, penalties, interest, or other
amounts adjudged due under the judgment that were not satisfied from the
proceeds from the tax sale.”   Id. § 34.04(c)(2), (4).  Therefore,
a taxing unit making a claim for these amounts must do so within two years of
the sale.  See id. § 34.04(a), (c)(2), (4).

However, appellants did not request
the proceeds under section 34.04—but pursuant to section 34.03(b), which provides
that “the clerk shall distribute the excess proceeds to each taxing unit
participating in the sale . . .” if no claimant establishes entitlement to the
proceeds within two years from the date of sale.  Id. § 34.03(b).  Therefore,
this provision mandates distribution of the excess proceeds by default to the
taxing units participating in the sale, irrespective of whether any taxes,
penalties, or interest remain due, if no party timely makes a claim under section
34.04.  See id.  Section 34.03(b) imposes no obligation on the taxing
unit to even request the proceeds pursuant to this provision after expiration
of the two-year period.  See id.  Rather, the clerk has a ministerial
duty to distribute the proceeds to each taxing unit participating in the sale
if no party establishes entitlement to them under section 34.04.  See id.
§§ 34.03(a); 34.04; see also Franks v. Woodville Indep. Sch.
Dist., 132 S.W.3d 167, 171 (Tex. App.—Beaumont 2004, no pet.) (recognizing
that distribution to a taxing unit under section 34.03(b) does not involve a
judicial determination but is a ministerial process conducted by the clerk
after a judicial determination on a party’s claim to the funds under section
34.04).  Cune cites no provision allowing a
former owner who fails to timely request excess proceeds under section 34.04 to
nonetheless recover the funds because they were not distributed to the taxing
unit pursuant to section 34.03(b) within a reasonable time after expiration of
the two-year period.[8]

In sum, we conclude the trial court
erred by awarding the excess proceeds to Cune, as assignee of Jenkins, because neither
Cune nor Jenkins filed a request within two years after sale of the property.  Accordingly,
we sustain appellants’ second and third issues.

We reverse the trial court’s order
and render judgment denying Cune’s motion to release the excess proceeds.

 

 

                                                                                    

                                                                           
/s/    Charles W. Seymore

                                                                                    Justice

 

Panel consists of Justices Yates,
Seymore, and Brown.









[1]
The City of Bryan was also a plaintiff in the suit but is not a party to this
appeal. 





[2] In the present case, it is apparently undisputed that
there were no claims asserted by persons or entities in the first four
categories with priority relative to the excess proceeds.





[3]
Appellants, as well as a sister court, refer to this two-year period as a “statute
of limitations” or “limitations” period.”  See Franks v. Woodville
Indep. Sch. Dist., 132 S.W.3d 167, 171 (Tex. App.—Beaumont 2004,
no pet.).  We do not necessarily agree
that this period is a statute of limitations in the classic sense, i.e. an
affirmative defense that a taxing unit or other person or entity must raise to
defeat a claimant’s request, because: (1) the two-year requirement is included
within the actual provision authorizing, and specifying the requirements for, a
claim and thus could arguably be construed as an element of the claim; see
Tex. Tax. Code Ann. § 34.04(a); and (2) the requirement that the clerk
distribute the excess proceeds to “each taxing unit participating in the sale .
. .” if no party makes a claim within the two-year period, id. §
34.03(b), indicates the trial court is not authorized to award the proceeds to
a person who later makes an untimely claim simply because no other person or
entity opposed it as untimely.  Nonetheless, we need not decide whether
application of the two-year period is an affirmative defense because appellants
did raise the issue, but we will refer to it as the “two-year requirement.”





[4]
Although we do not directly address whether Cune
proved Jenkins was a former owner, we note the record itself contains confusion
regarding the identity of the “Jenkins,” through whom Cune claimed the
proceeds, which touches on the issue regarding the untimely claim.  Several months
before Cune filed, through his current attorney, the motion at issue, a party
named “George Earl Jenkins Jr.” filed, through a different attorney who
represented the defendants in the tax suit, a petition seeking the excess proceeds. 
This party alleged that his father, “George Earl Jenkins,” died in 1986,
leaving “George Earl Jenkins Jr.” as his sole heir.  This petition is the only
mention in the record of a “George Earl Jenkins Jr.”  The party claiming
the right to the proceeds is referred to as “George Earl Jenkins” or “Jenkins,”
with no “Jr.,” in the documents relating to the tax suit and sale, the pleadings
filed relative to Cune’s motion, at the hearings on the motion, and in the
parties’ briefs.  Cune has not explained the identity of the “Jenkins” claiming
the proceeds or why “Jr.” filed a petition without further reference to him in
the record.  Thus, it is unclear whether Cune claims the proceeds as assignee
of the original owner or as assignee of the son/heir but “Jr.” was merely omitted
from his name relative to the request.  Regardless of which “Jenkins” is
assignor, no petition was filed on his behalf within two years of the tax
sale.   





[5]
Cune’s attorney represented to the trial court that, although Cune had been
assigned Jenkins’s rights, Jenkins would receive some share of the proceeds.





[6]
Appellants correctly assert that, at the hearing
on Cune’s motion, he presented no evidence Jenkins did not receive the clerk’s
notice.  Appellants also argue Jenkins admitted receipt of the notice in his
affidavit of assignment.  In contrast, Cune contends the clerk’s record shows
Jenkins did not receive the notice and the affidavit contained no such admission. 
We need not address these disputes because Cune cites no authority allowing
tolling of the two-year requirement if he did not receive the notice.





[7]
At the hearing, Cune suggested for the first time that Jenkins also did not
receive notice of the underlying tax sale, and Cune reiterates this contention
on appeal.  Because the motion before the trial court was not a proceeding to
set aside the tax sale, but only a claim for excess proceeds, the contention
regarding lack of notice of the tax sale is immaterial to our analysis.





[8]
Because disbursement to a taxing unit under
section 34.03(b) does not involve a judicial determination and appellants seek
no affirmative appellate relief regarding their request for the proceeds, we make
no disposition concerning their ability to now obtain the funds in light of our
disposition on Cune’s motion.  We merely outline the duty imposed under section
34.03(b) to negate Cune’s suggestion he is entitled to the proceeds because
appellants failed to timely request them under this provision.